682 A.2d 776

**Gary MONTESON, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (TRINITY INDUSTRIES), Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 1996.

Decided Sept. 17, 1996.

Susan Paczak, Pittsburgh, for Gary Monteson.

Richard E. Bordonaro, Erie, for Trinity Industries.

Thomas W. Corbett, Jr., Harrisburg, for Commonwealth.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION*

ZAPPALA, Justice.

We granted allocatur to determine whether the referee [1] erred in concluding that Employer was entitled to a suspension of Claimant's workers' compensation benefits. For the reasons set forth below, we affirm.

Appellant, Gary Monteson (Claimant), suffered a work-related back injury on October 31, 1989, while working for Trinity Industries (Employer). Employer issued a notice of compensation payable dated November 22, 1989. On December 7, 1989, Claimant signed a final receipt and returned to work. On January 1, 1990, Claimant reinjured his back at work and benefits were reinstated pursuant to a supplemental agreement dated January 15, 1990. Claimant's treating physician released Claimant to work and on April 10, 1990, a second final receipt was signed. However, Employer laid off Claimant and other workers with similar seniority effective April 5, 1990. Claimant then applied for and received unemployment compensation benefits from April 1990 to June 1990.

Claimant was subsequently hired by Greenwood Nissan as a car salesman on June 9, 1990. Two days later, Employer offered Claimant his pre-injury job. Claimant rejected this offer of employment. Two weeks later, Greenwood Nissan terminated Claimant's employment due to his failure to sell cars. Claimant remained unemployed until March 1991, when he was hired as an independent agent by Sosmetal, Inc. to sell automotive repair materials. He was terminated by Sosmetal in October 1991.

On November 22, 1991, Claimant filed a petition to set aside the April 10, 1990, final receipt. Claimant alleged that at the time he signed the final receipt he was not fully recovered from his work-related injury. Claimant sought reinstatement of his benefits as of April 10, 1990, when he was laid off upon his return to work.

---

1. This case was heard prior to the enactment of Act 44 of 1993 in which the title of referee was changed to "workers' compensation judge." 77 P.S. § 701.

The referee found that Claimant had not fully recovered from his original injury when he signed the April 10, 1990, final receipt and that he was still suffering from symptoms of the original injury. The referee granted the petition to set aside the final receipt, reinstated total disability benefits from April 10, 1990, to June 8, 1990, awarded Claimant partial disability benefits for June 9 and June 10, 1990, and suspended benefits as of June 11, 1990. The referee determined that Employer was entitled to a suspension of benefits because it had proven that Claimant voluntarily refused to accept its offer of employment for reasons unrelated to his work-related injury, citing *Dugan v. WCAB (Fuller Co.)*, 131 Pa. Commw. 218, 569 A.2d 1038 (1990).[2]

On appeal, the Workmen's Compensation Appeal Board held that the referee's reliance on *Dugan* was misplaced, but the error was harmless. The Board held that Employer was entitled to a suspension of benefits as of June 11, 1990, because Claimant had refused a job offer from Employer for reasons unrelated to his disability and because the law does not require an employer to keep a job open indefinitely. The Board also found that the Claimant did not exercise bad faith in refusing Employer's June 11, 1990, job offer.

The Commonwealth Court affirmed. Utilizing the analysis set forth in *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990), the Commonwealth Court determined that Claimant was not entitled to reinstatement of benefits because his refusal of Employer's offer of employment was unrelated to his work injury. The court noted that although Claimant continues to have some residual effects from his work-related injury, he admitted that his refusal of Employer's offer was not related thereto.

█ The scope of review in workers' compensation proceedings is limited to a determination of whether constitutional

2. In *Dugan,* the Commonwealth Court held that where a partially disabled employee voluntarily retires and testifies that he has no intention of returning to any form of work, that testimony supports a finding that Claimant has withdrawn from the job market, justifying a suspension of benefits.

rights have been violated, an error of law has been committed, or any findings of fact are not supported by substantial evidence. *JFC Temps, Inc. v. Workmen's Compensation Appeal Board,* 545 Pa. 149, 680 A.2d 862 (1996).

■ Initially, we note that it was within the referee's authority to dispose of Claimant's Petition to Set Aside the Final Receipt and Reinstate Compensation Benefits by awarding total and/or partial disability benefits for a specific time period and suspending benefits thereafter. It is clear that a referee's decision may be based upon the evidence introduced when effectuating the rights of both parties, regardless of the specific relief sought. *Inglis House v. W.C.A.B.,* 535 Pa. 135, 634 A.2d 592 (1993). Moreover, Section 413 of the Workers' Compensation Act provides in relevant part:

A referee designated by the department may, *at any time,* modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or the status of any dependent has changed....

77 P.S. § 772 (emphasis added).

■ Having concluded that the suspension of benefits was within the authority of the referee, we must now examine whether the suspension was proper. In *Pieper,* this Court addressed the issue of whether the Commonwealth Court committed an error of law by requiring the claimant to establish a causal connection between his prior work-related injury and his present disability in order to qualify for reinstatement of compensation. We determined that no causal connection had to be shown in a suspension of benefits situation. We then set forth the burden of proof for a claimant seeking reinstatement of suspended benefits:

A "suspension of benefits" is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering

suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation. Should a claimant seek to have a suspension lifted, he is required to demonstrate only that the reasons for the suspension no longer exist. Simply, a claimant must show that while his disability has continued, his loss of earnings has recurred.

*Id.* at 33, 584 A.2d at 304. (Citations omitted).

We also stated that the law requires a claimant to prove two things in order to show that the reasons for the suspension no longer exist: first, that through no fault of the claimant his/her earning power is once again adversely affected by the injury, and second, that the injury which gave rise to the claimant's original claim in fact continues.[3] *Id.* at 34, 584 A.2d at 305.

Claimant initially asserts that his refusal of Employer's job offer was not based on bad faith but was the result of his fear of reinjuring himself and his desire to continue a career as a car salesman. He concludes that he satisfied his burden under *Pieper* by establishing that through no fault of his own his employment with Greenwood Nissan and subsequently Sosmetal, Inc. was terminated. Thus, he asserts that his injury continued and his loss of earnings recurred.

The fatal flaw in this reasoning is that Claimant failed to establish that *through no fault of his own his earning power was adversely affected by the injury.* Claimant's loss of earnings did not result from his work injury but rather was due to the fact that he obtained alternative employment from which he was terminated.[4] Claimant was released to return to his pre-injury position, without restrictions, by his treating physician. He worked until he was laid off for economic

3. We affirmed the *Pieper* analysis in *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)* 536 Pa. 490, 640 A.2d 386 (1994), while recognizing that the term "disability" was imprecisely used in *Pieper* to signify physical injury rather than loss in earnings.

4. The Board found that Claimant's fear of reinjury upon returning to his prior position was unsupported by medical evidence. Therefore, his subjective fear does not create a causal connection between his injury and income loss.

reasons. Although Claimant continued to suffer symptoms of the work injury, he admitted that his termination from subsequent employment was totally unrelated to his work injury and that his injury did not affect the work he had been performing.

We recognize that a causal connection need not be established between the prior work injury and the present disability in a suspension of benefits case. This rule of law should not be construed to eliminate the requirement of a causal relationship between the work injury and the subsequent reduction in earnings. Otherwise, any reduction in income by a claimant who suffers from residual effects of a work injury would trigger reinstatement of at least partial benefits regardless of the reason why the loss in income arose. Such a conclusion is inconsistent with the purpose of the workers' compensation law. Section § 413 states:

> ... That where compensation has been suspended because the employee's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.*

77 P.S. § 772 (emphasis added). Pursuant to this section, the employer has the opportunity to establish that compensation should remain suspended despite a claimant's loss in earnings because that loss was attributable to factors other than the work injury.

Although not controlling, our decision in *Harle v. W.C.A.B. (Telegraph Press)*, 540 Pa. 482, 658 A.2d 766 (1995), supports the proposition that in order to be compensable a loss in earnings must result from the claimant's work injury. In *Harle*, the claimant injured his thumb, received total disability benefits, and then was eventually released to return to his prior position. His employer, however, had ceased conducting business. The claimant later obtained a similar position elsewhere at a lower wage. The referee granted the employer's termination petition on the ground that the claimant's disabili-

ty relative to his injury had ceased. The Board affirmed. Relying on medical testimony that the claimant continued to have a reduced range of motion in the joint of his thumb, the Commonwealth Court concluded that there was not substantial evidence to support the findings necessary for a termination of benefits, and therefore a modification of benefits to partial disability was appropriate.

In vacating the decision of the Commonwealth Court and ordering a suspension of benefits, we held that even if a residual physical impairment remains, a claimant is not entitled to benefits, including partial disability benefits based on the difference between his pre-injury and post-injury wages, unless that difference is related to the work injury.

Similarly, a relationship between the injury and the reduction in Claimant's earnings is necessary in the instant case. As Claimant failed to establish the same, the referee properly suspended his workers' compensation benefits. If Claimant's earning power is affected in the future by the residual impairment from the work injury, he may seek reinstatement of workers' compensation benefits at that time.

NIX, Former C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a dissenting opinion.

CAPPY, Justice, dissenting.

The question before the court in this matter is whether a claimant under the Workers' Compensation Act (the Act) [1] who seeks and acquires work, after being laid off by his employer, is required to quit his new job and resume his pre-injury position when offered him by his former employer or risk losing future workers' compensation benefits. I would find the Claimant is not required to quit his new job, and, thus, I respectfully dissent from the majority opinion.

Because I believe that the majority does not adequately frame the issue we are to be deciding in this appeal, I will set

1.  Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1 *et seq.*

forth the factual and procedural background in this dissent in order to make the issue clear.[2]

Claimant in this matter suffered a work-related injury to his back on October 31, 1989 and subsequently received workers' compensation benefits until he signed a final receipt on December 7, 1989 and returned to work with Employer. After reinjuring his back at work on January 1, 1990, Claimant's workers' compensation benefits were reinstated pursuant to a supplemental agreement dated January 15, 1990. Once Claimant was released to work by his treating physician, he signed a second final receipt on April 10, 1990, but was laid off effective April 5, 1990 as part of a massive lay-off by Employer. After being unemployed for slightly over two months and receiving unemployment compensation benefits from April of 1990 to June of 1990, Claimant was able to secure employment as a car salesman on June 9, 1990. When, two days after Claimant started this new job, Employer offered Claimant his pre-injury job, Claimant rejected the offer. Claimant was not a successful car salesman, however, and he was terminated after only two weeks on the job for failure to sell enough cars. He was likewise unsuccessful at his subsequent sales job with Sosmetal, Inc., and, thus, in October of 1991, he again found himself receiving unemployment compensation. In November of 1991, Claimant sought to set aside the April 10, 1990 final receipt and sought reinstatement of his benefits as of April 10, 1990, when he was laid off upon his return to work.

The referee held that Claimant was entitled to reinstatement of his worker's compensation benefits, but only through June 11, 1990, because on that date, Claimant voluntarily refused to accept Employer's offer of employment for reasons unrelated to his work-related injury, citing *Dugan v. W.C.A.B. (Fuller Co.)*, 131 Pa.Cmwlth. 218, 569 A.2d 1038 (1990).[3] As

**2.** Contrary to the majority's framing of the issue as a suspension matter, the appellant in this appeal is seeking reinstatement of workers' compensation benefits, and it is whether he carried his burden of proof as to his entitlement to reinstatement of these benefits when he was no longer employed which we are addressing herein.

**3.** *Dugan* involved a contested claim petition filed by a claimant who had suffered chest pains at work and was later diagnosed as having

for the two days when Claimant was employed as a car salesman prior to rejecting Employer's offer, June 9 and 10, 1990, the referee awarded partial disability benefits.

The Board found the referee committed harmless error by relying on *Dugan* because that case was factually distinguishable from the present scenario. The Board nevertheless upheld the referee's suspension of benefits as of June 11, 1990 on the basis that Claimant's refusal to accept Employer's job offer was for reasons unrelated to his disability. Further, the Board rejected Claimant's argument that he had a right to reinstatement of benefits as of October 23, 1991, when Claimant was examined by Dr. Paul Hoover, who is a certified physical medicine and rehabilitation expert. The Board held that Dr. Hoover's testimony supported a finding that Claimant has remained partially disabled, but not that Claimant's condition of total disability recurred on October 23, 1991.

Citing *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990), the Commonwealth Court stated that in order to succeed on his petition to reinstate benefits, Claimant bore the burden of proving that: 1) through no fault of his own, Claimant's earning power was once again adversely affected by his injury; and 2) the injury which gave rise to Claimant's original claim continued.

Citing this Court's opinion in *Dillon v. W.C.A.B. (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), the Commonwealth Court reasoned that both the capacity of the Claimant to work and the availability of work affect the extent of the injured Claimant's loss of earning power. The Commonwealth Court affirmed the Board's decision, recognizing that Claimant proved that he continues to have some residual effects of his work-related injury, but concluding that because Claimant

suffered a myocardial infarction. At the hearing on this petition before the referee in *Dugan,* the claimant testified that he was not attempting to obtain employment because he was retired. The Commonwealth Court in *Dugan* held that workmen's compensation benefits were properly awarded and suspended as of the date when Claimant retired, reasoning that Claimant's loss of earnings was not caused by his physical disability but by his voluntary retirement and withdrawal from the labor market.

voluntarily rejected Employer's offer to return to his pre-injury-job for reasons unrelated to his work injury, he failed to meet the *Pieper* standard for reinstatement of his benefits.

Neither party disputes the referee's grant of Claimant's petition to set aside his April 10, 1990 final receipt. Nor is the referee's grant of Claimant's petition to reinstate his disability benefits commencing April 10, 1990 challenged herein. *See* 77 P.S. § 772. What is in dispute is the referee's conclusion, affirmed by the Board and the Commonwealth Court, that this reinstatement of benefits be only until June 11, 1990, the date when Claimant rejected Employer's offer to return to his pre-injury job, and that Claimant's benefits be suspended as of June 11, 1990.

The majority acknowledges that Claimant here continues to suffer from his work-related back injury which gave rise to his original claim for compensation, satisfying the second part of the *Pieper* standard. The majority concludes, however, that Claimant has failed to meet the requirement of *Pieper* that he show that, through no fault of his own, his earning power is once again adversely affected by his injury.

The majority opinion concludes that Claimant's "loss of earnings did not result from his work injury but rather was due to the fact that he obtained alternative employment from which he was terminated." The majority reasons that Claimant's earning power was adversely affected by his termination from the sales employment he took after being laid off by Employer; Claimant's work-related back injury did not affect his ability to perform this sales employment and his termination from this employment; and, therefore, Claimant's earning power is not adversely affected by his work-related injury.

As a result, the majority creates an additional requirement to *Pieper* that, where a claimant seeking reinstatement of his worker's compensation benefits has secured new employment after being laid off from his job by his employer and loses that new employment, he must show a *causal connection* between his prior work-related injury and his loss of this new employment in order to show his injury is once again adversely

affecting his earning power. I dissent from the majority's reasoning here as it represents a departure from *Pieper* with which I cannot agree.

In *Pieper*, the claimant sought reinstatement of his suspended worker's compensation benefits. As in the instant matter, the claimant in *Pieper* had suffered a work-related back injury for which he received worker's compensation benefits, and, after returning to work full-time with his employer, had been laid off and receiving unemployment compensation benefits.

We held in *Pieper* that the claimant did not have to establish a causal connection between his prior work-related injury and his present disability in order to be eligible for reinstatement of his worker's compensation benefits but had to meet the two prongs of the standard set forth *supra*. The continuance of the claimant's work-related back injury in *Pieper* was established. We ruled in *Pieper* that the earning power of the claimant was "once again affected by his disability" where he proved that he no longer received unemployment compensation and was only able to maintain a part-time job as a bartender at a reduced income.[4]

The majority in the present case turns to language in section 413 of the Worker's Compensation Act, 77 P.S. § 772, and *Harle v. W.C.A.B. (Telegraph Press)*, 540 Pa. 482, 658 A.2d 766 (1995), in an attempt to buttress the requirement it is placing on Claimant here.

The language from section 413 quoted by the majority states:

> ... That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is pay-

---

4. We noted in *Pieper* that the burden is upon the employer to rebut the claimant's proof of loss of earnings by establishing the availability of work claimant is capable of performing. *Pieper*, 526 Pa. at 34, n. 8, 584 A.2d at 305, n. 8.

able, unless it be shown that the loss in earnings does not result from the disability due to the injury.

I do not find this language supportive of the majority's imposition of a causal connection here. The above-quoted language from section 413 addresses a situation "where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury." Such is not the case in the present matter. Further, quoting this portion of section 413 lends no answer to the issue of whether the Claimant's earning power is once again adversely affected by his work-related injury. Moreover, I find *Harle* equally unsupportive of the majority's position. The claimant in *Harle* had injured his thumb at work. He received worker's compensation benefits, and, when he was released by his physician to return to light duty work, his employer had ceased conducting business. The employer in *Harle* filed a termination petition asserting the claimant's disability had ceased. The Commonwealth Court found that the claimant's medical disability had not entirely ceased, and that, since the claimant's pre-injury position was not available and the claimant had obtained a similar position elsewhere at a lower wage, modification of benefits to partial disability was appropriate. This court vacated the Commonwealth Court's remand of the matter for calculation of partial disability benefits, instead ordering the matter remanded to the Board with instructions that the claimant's benefits be suspended.[5]

Our reason for finding suspension of the claimant's benefits appropriate in *Harle* was that since the claimant continued to suffer residual physical impairment from his injury, he could, in the future, if his earning power were to be affected by the residual impairment from his injury, seek reinstatement of partial disability benefits by proving the *Pieper* standard for reinstatement of suspended benefits. We did not, in *Harle*, address what proof the claimant would have to present in such

**5.** While the author of this dissent joined this court's opinion in *Harle*, this joinder certainly was not intended as a joinder in the reasoning the majority here is now finding in *Harle*.

a future proceeding to establish that his earning power was once again adversely affected by his injury.

Importantly, at the time Claimant rejected Employer's offer, his earning power was not adversely affected by his back injury because he was employed as a car salesman and his back injury did not affect his employment. When Claimant rejected Employer's offer, made only two days into Claimant's new employment, Claimant believed he had secured new employment as a car salesman and feared being injured again at Employer's job. The majority penalizes Claimant for rejecting Employer's offer to return to his pre-injury employment and for being an unsuccessful salesman. By creating the causal connection requirement, the majority fails to conduct any inquiry into the Claimant's capacity to work and availability of work, matters which we have previously stated in *Dillon* affect the extent of an injured employe's loss of earning power.

As to Claimant's capacity to work, Claimant proved to the Board that he has remained partially disabled from his work-related back injury, and that this disability still continues. There is no finding by the referee that Employer sustained its burden of proving availability of a job Claimant is capable of performing. *See supra* n. 3. The referee did not make any findings, however, as to how long Claimant, after he was terminated from his sales employment, received unemployment compensation. Thus, I vigorously dissent and would reverse the order of the Commonwealth Court and remand to the referee for reinstatement of partial disability benefits to Claimant.