**ELJER INDUSTRIES and the Travelers Insurance Company, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (EVANS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 1997.
Decided Feb. 3, 1998.

F. David Dermotta, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Eljer Industries (Employer) petitions for review from the November 5, 1996, order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the workers' compensation judge (WCJ), increasing the partial disability benefits of John Evans (Claimant). We affirm.

On January 7, 1989, Claimant sustained a work-related back injury, described as a mid-back sprain, while in the course of his work as a placer for Employer. Claimant began receiving temporary, total disability payments because of this injury. In May of 1989, Claimant was released to perform light duty work. Employer offered Claimant a choice of two different light duty positions —— a sprayer or a ware hustler —— each paying less than his pre-injury position. Claimant chose the sprayer position as it paid a higher hourly rate than the ware hustler position, although it paid a lower hourly rate than his pre-injury job as a placer, which he was physically unable to perform.

In September of 1992, Claimant's performance as a sprayer became unsatisfactory by Employer's standards. Claimant began to receive progressive warnings about his work product after September of 1992. Claimant attempted, but was unable, to perform the work to the standard expected by Employer. Employer disqualified Claimant from the sprayer position, effective May 7, 1993, because of poor workmanship. At that time, Claimant began performing the job of ware hustler, at a weekly wage less than that of the sprayer position.

On January 7, 1994, Claimant filed a reinstatement petition requesting an increase in the partial disability rate he had been receiving in addition to his pay as a result of his transfer from placer to sprayer because his transfer from the sprayer position to ware hustler resulted in an additional loss of pay. After hearings on the matter, the WCJ noted that the following pertinent findings were not disputed:

5. The [Claimant] did not submit any medical evidence to show that his injury was a factor in his inability to perform acceptable work as a sprayer. He never mentioned any medical problem as a factor in his work performance to Employer.... The [Claimant] did not testify that there was a physical or injury related reason for his unsatisfactory work performance; he testified only that he did not know if there was any such reason.

6. The [Claimant] was not disqualified from his job as a sprayer because of any fault of his own. He did his best to bring his work up to an acceptable standard but was unable to do so. He was disqualified because he is unable to develop the skills, which are necessary to perform satisfactory work; this inability is not related to any lack of motivation or effort.

(R.R. at 136a.) The WCJ awarded Claimant an increase in his partial disability rate after concluding that Claimant's "loss of wages resulting from his disqualification from the sprayer job was not caused by any wrong

doing or inappropriate action by him." *Id.* On appeal, the Board affirmed the WCJ, stating that the WCJ did not err in concluding that Claimant was entitled to a modification of benefits without finding that Claimant's work injury was a factor in his inability to perform the sprayer position. Employer now appeals to this court.

On appeal, Employer raises two issues: Did the WCJ err (1) in engaging in an analysis of whether Claimant's increased loss of wages was the result of wrongdoing, or inappropriate action on the part of Claimant, or (2) in concluding that Claimant, who was still suffering from a partial disability, is entitled to a modification of benefits when his disability increased, without finding that Claimant's work injury was a factor in his inability to perform the sprayer position.[1]

Section 413(a) of the Workers' Compensation Act (Act)[2] specifically refers to a modification or reinstatement of compensation benefits. This section, in relevant part, states:

> A referee designated by the department *may*, at any time, *modify*, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, *upon proof that the disability of an injured employe has increased*, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependant has changed.

77 P.S. § 772 (emphasis added). In this case, therefore, the Act thus requires the following proof for the modification requested: (1) that the Employee is injured; and (2) that his disability has increased. As our Supreme Court has held, "the word 'disability' is to be regarded as synonymous with 'loss of earning power.'" *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa. 490, 501, 640 A.2d 386, 391 (1994) (citation omitted). Here, there is no dispute that Claimant's work injury continues and that he sustained an

additional loss of earnings when he was transferred to the lower paying ware hustler position.

Employer argues, however, that our Supreme Court's decisions in *Monteson v. Workmen's Compensation Appeal Board (Trinity Industries),* 545 Pa. 632, 682 A.2d 776 (1996), and *Harle v. Workmen's Compensation Appeal Board (Telegraph Press),* 540 Pa. 482, 658 A.2d 766 (1995) govern the present matter. In both *Monteson* and *Harle* the claimants were released, and did return, to their preinjury positions with no disability. Thereafter, they sustained a loss of earning power through no fault of their own; Monteson was laid off and Harle's employer went out of business. The claimants in both cases were denied benefits.

*Monteson* and *Harle* are distinguishable from the present matter because Claimant here, as with any claimant that continues to receive partial disability benefits, remains "damaged goods" with a continuous impairment of earning power present since the work-related injury. Claimant continues to experience partial disability and was not released to full duty *without any disability* as in *Monteson* or *Harle.* This court will not extend the rationale applied in those cases to a claimant who returns to work at a new job for which he is physically fit but is lacking the aptitude, skills or other qualifications required and remains partially disabled.

Employer also argues that *Hertz–Penske Truck v. Workmen's Compensation Appeal Board (Bowers),* 546 Pa. 257, 684 A.2d 547 (1996), is dispositive of the present matter. In *Bowers,* the claimant sustained a work-related low back injury. The claimant continued, however, in the same position without any loss of earnings and, consequently, *without any disability.* Two months later, due to customer complaints, the employer informed the claimant that he would either have to resign or be fired. The claimant resigned, and subsequently filed for workers' compen-

---

**1.** This court's appellate review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Southern Chester County Hospital v. Workmen's Compensation Appeal*

*Board (Sinsheimer),* 676 A.2d 315 (Pa.Cmwlth. 1996).

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

sation benefits. The claimant received an award of benefits, but the employer later filed to terminate or suspend the benefits. The suspension was granted but, on remand, was denied.

On appeal, the *Bowers* Court addressed the burden of proof for a suspension where a claimant did not have the presumption of ongoing disability, such as in the case *sub judice,* where a claimant is receiving partial disability benefits. This was because the *Bowers* claimant was working at the time of his forced resignation and had not exhibited any disability by loss of earning power prior to that dismissal. Here, Claimant still had a disability, i.e. partial loss of earning power, at the time of his transfer to the lower paying light duty position of sprayer. Thus, when transferred to ware hustler, his disability increased not only from his original earning power as a placer but also from his previous earning power as a sprayer. This distinguishes *Bowers* from the present matter.

*Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990), and *Harper & Collins v. Workmen's Compensation Appeal Board (Brown),* 543 Pa. 484, 672 A.2d 1319 (1996), govern the instant case. The Supreme Court held that when a claimant, who is unable to return to his pre-injury position because of restrictions resulting from his work-related injury but is working a modified duty position, suffers a loss in earnings through no fault of his or her own, he or she is entitled to partial disability benefits for the resultant wage loss. This is exactly what occurred in the present case.

Claimant submits that his transfer to the job of ware hustler "was an economic business decision made by the employer when the claimant's spraying did not conform to the employer's standards." (Claimant's brief at p. 12.) Indeed, Claimant, although attempting to perform the higher paying light duty position of sprayer, was, in essence, incapable of meeting Employer's standards. He should not be penalized for attempting to reduce his disability by choosing a higher paying job offered to him which, if he was qualified, would also benefit his Employer by reducing the amount of earnings lost from his physical inability to perform the job of placer. Claimant did not resign as in *Bowers.* When Employer disqualified Claimant from the sprayer position and transferred him to the lower paying light duty position of ware hustler, the disability from Claimant's pre-injury position as placer still existed. Rather than prove that Claimant's disability changed or ceased to exist, Employer only increased the extent of Claimant's disability by increasing the economic loss of earnings and earning power Claimants would suffer as a result of the transfer.

Because he is on partial disability benefits, Claimant is provided with a presumption that his disability continues from his job as a placer to that of a sprayer. Indeed, this presumption is acknowledged by both parties. When he was transferred by Employer from the sprayer position to the ware hustler position, however, the extent of Claimant's disability, *i.e.,* loss of earning power, increased to also include the difference in earnings between those two positions. Because Claimant's partial disability still existed at the time of the transfer, the presumption continues from his job as sprayer to the lesser paying job of ware hustler.

■ While his inability to work as a sprayer is not due to his injury, Claimant was, in essence, unqualified for the sprayer position because he could not develop the requisite occupational skills necessary to perform the work. Because his work injury continues, however, he is still unable to physically perform his pre-injury job of placer, he is entitled to a presumption that his disability is still causally related to his work injury and, but for the availability of the ware hustler job, could be entitled to reinstatement of total disability benefits. *See McKay v. Workmen's Compensation Appeal Board (Osmolinski),* 688 A.2d 259 (Pa.Cmwlth. 1997).[3] Here, as a result of his physical disability from his pre-injury job and the ill-fated decision to attempt a job for which he lacked the necessary skills, Claimant was

---

**3.** Although dealing with a suspension, *McKay* provides guidance in the present matter regarding an individual who, while working under medical restrictions, is laid off through no fault of his own.

transferred to a light duty position as a ware hustler which pays less than his pre-injury position. Therefore, Claimant is entitled to receive partial disability benefits of sixty-six and two-thirds percent of the difference between his initial average weekly wage and his present earning power.

If the sprayer position was not available at the time Claimant chose it, and he had originally selected the job of ware hustler, he would be entitled to the same partial disability benefits that the WCJ and the Board have now awarded. Should he now be penalized for selecting the wrong option of a job, which he has performed, to the best of his ability but has since proven to be not qualified because of a lack of skills or talent?

Although Employer argues that Claimant performed the sprayer job in the past, the record is clear that Claimant was not competent from the standard of skills required to regularly perform the work of a sprayer. Richard Mortimer, the head of the spray and kiln departments testified as follows:

Q. Sometime in or around September of 1992, you noticed a problem with the manner in which Mr. Evans was doing his spraying?

A. Mr. Evans was always the—how do I say it—worst of the three or four sprayers that lived on the lower edge of acceptable standards continuously, and at this point in time it got too far out of hand.

(R.R. at 95.) Employer argues, however, that the WCJ erred in concluding that Claimant was entitled to a modification of benefits without finding that Claimant's work injury was the cause of his inability to perform the job as a sprayer.

Our Supreme Court has stated that, regarding disability being synonymous with a loss of earning power, "[i]nasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may change from partial to total or vice versa based on a change in one with *or without* the other." *Dillon*, at 501, 640 A.2d at 392 (emphasis added). Thus, a claimant may be entitled to a modification by presenting proof of a lack of available work even

where there is no change in the claimant's physical status.

Such is the case here because the job of sprayer was no longer available to claimant, who did not have the ability to develop the occupational skills necessary for the job of sprayer and, as the WCJ correctly stated, "this inability is not related to any lack of motivation or effort." (R.R. at 136a.) Employer here, by disqualifying Claimant from the sprayer position, effectively eliminated Claimant from this light duty position, making it unavailable for Claimant.

In *Miller v. Workmen's Compensation Appeal Board (Fischbach & Moore)*, 160 Pa.Cmwlth. 589, 635 A.2d 709 (1993), this court held that a job requiring a car was not actually available to a claimant who testified he does not drive. Citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the court noted that a position is actually available to a claimant, only "if the claimant is capable of performing the job, considering not only his physical limitations but also his age, his intellectual capacity, his education, his previous work experience, and other relevant factors," the determination of which is the responsibility of the referee whose decision as to whether a claimant can perform a particular job is reviewable as a finding of fact. Certainly, the referee in the instant case was entitled to consider the good faith ineptness and lack of aptitude on the part of the Claimant in the instant case as "other relevant factors" which made the sprayer job not really "available" within the meaning of *Kachinski*. When Claimant was permitted to work with restrictions making him unable to perform the job of placer, if the only jobs available then were ware hustler and the higher paying job of designer and Claimant chose designer but had not the artistic qualifications for the job, would he not be similarly eligible, after a good faith effort, to increased partial disability benefits when transferred to the lower paying job of ware hustler?

Thus, the WCJ erred not in examining whether the Claimant carried his burden on

the third prong of *Kachinski* to determine whether Claimant followed through in good faith on the equivalent of a job referral to the position of sprayer and thereby engaging in an analysis of whether Claimant's increased loss of wages was the result of wrong doing or even inappropriate action on the part of Claimant.

Claimant, therefore, as a result of his partial disability, was entitled to a modification of benefits because the increase in his disability was caused by the Employer's transfer even without a specific finding by the WCJ that Claimant's work injury was a factor in his inability to perform the sprayer position.

The Board did not err in affirming the WCJ's decision. Accordingly, the order of the Board is affirmed.

### ORDER

NOW, February 3, 1998, the November 5, 1996, order of the Workers' Compensation Appeal Board, No. A94–4069, is affirmed.

PELLEGRINI, J., concurs in the result only.