# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Planamento,     :
     Petitioner  :
          :
    v.      :
          :
Workers' Compensation Appeal  :
Board (U.S. Airways),    :  No. 1507 C.D. 2015
     Respondent :

U.S. Airways and AIG,    :
     Petitioners  :
          :
    v.      :
          :
Workers' Compensation Appeal  :
Board (Planamento),    :  No. 1744 C.D. 2015
     Respondent :  Submitted: January 15, 2016


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY       FILED: July 1, 2016


   U.S. Airways (Employer)[1] and David Planamento (Claimant) petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 19, 2015 order affirming in part and denying in part the Workers' Compensation Judge's (WCJ) decision denying Employer's Petition to Suspend/Terminate (Petition) Claimant's WC benefits. There are three issues before this Court: (1) whether the Board erred by upholding the WCJ's decision denying

---

[1] AIG is Employer's workers' compensation insurance carrier third-party administrator.

Employer's Petition to suspend Claimant's benefits; (2) whether the Board erred by reversing the WCJ's expansion of Claimant's work injury to include L3-4 disc herniation and L3-4 facet disease; and, (3) whether the Board erred by upholding the WCJ's decision denying Employer's Petition to terminate Claimant's benefits. After review, we affirm.

Claimant suffered a work-related low back strain on May 8, 2011 while moving baggage at the Philadelphia International Airport, which caused him to stop working. Claimant received total disability benefits pursuant to a notice of compensation payable.[2] Claimant underwent an independent medical evaluation (IME) conducted by orthopedic surgeon John R. Donahue, M.D. (Dr. Donahue) on December 2, 2011. Claimant returned to work on February 6, 2012, but continued receiving partial WC benefits due to a medical restriction on his ability to work overtime.

On February 7, 2012, Employer issued a notice that Claimant's benefits were suspended effective February 6, 2012. On March 13, 2012, Employer filed the Petition, declaring therein that Claimant had fully recovered as of December 2, 2011 and returned to work at his pre-injury wages. *See* Reproduced Record (R.R.) at 1a. Claimant timely denied Employer's allegations and filed an "Employee Challenge" (Challenge Petition). R.R. at 6a. On March 26, 2012, the WCJ granted Claimant's Challenge Petition and directed Employer to reinstate Claimant's WC benefits at a partial disability rate. Claimant has received partial disability benefits since that time.

WCJ hearings were held on March 14, April 25, October 24, 2012 and January 23, 2013 regarding Employer's Petition during which Employer offered Dr. Donahue's June 14, 2012 deposition into evidence. Claimant testified and presented

---

[2] On June 1, 2011, Employer issued a medical-only notice of compensation payable. On June 6, 2011, Employer issued a temporary notice of compensation payable which converted to a notice of compensation payable by operation of law on August 23, 2011.

neurosurgeon Perry J. Argires, M.D.'s (Dr. Argires) October 16, 2012 deposition. By April 17, 2013 decision, the WCJ denied Employer's Petition because Employer failed to prove that Claimant was either fully recovered from his work injury or returned to work without a loss of earnings. The WCJ also appeared to expand Claimant's injury description to include disc herniation and facet disease. Employer appealed to the Board.

On August 19, 2015, the Board upheld the WCJ's denial of Employer's Petition, but reversed the WCJ's decision to the extent the WCJ purported to amend Claimant's work injury description to include disc herniation and facet disease. On August 21, 2015, Claimant appealed from the portion of the Board's decision reversing the WCJ's work injury expansion to this Court (*see* 1507 C.D. 2015). On September 18, 2015, Employer appealed from the portion of the Board's decision affirming the WCJ's Petition denial to this Court (*see* 1744 C.D. 2015).[3]

Initially, Section 413(a) of the WC Act (Act)[4] states, in pertinent part:

> A workers' compensation judge designated by the [D]epartment [of Labor and Industry (Department)] may, at any time, . . . suspend, or terminate a notice of compensation payable, . . . upon petition filed by either party with the [D]epartment, upon proof that the disability of an injured employe has . . . decreased, . . . or has temporarily or finally ceased . . . . Such . . . suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has . . . decreased, . . . or has temporarily or finally ceased . . . . And provided further, That where compensation has been

---

[3] The appeals were consolidated by October 15, 2015 order. Employer is the designated petitioner. Employer filed a petition for supersedeas, which Claimant opposed. By November 30, 2015 order, this Court denied the petition for supersedeas.

"On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2708.

suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772. "Under [the Act], the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. Pa. Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

Employer argues that since Claimant's receipt of partial disability benefits is premised on Claimant's ability to work overtime, those benefits should have been suspended due to the Board's finding that "there was no competent medical evidence presented that [C]laimant was incapable of performing overtime work" and, thus, the Board erred in affirming the WCJ's decision not to suspend Claimant's benefits. Board Dec. at 7. We disagree.

A suspension is warranted under the [Act] where a claimant has a residual physical impairment attributable to a work-related injury but is receiving wages equal to or in excess of what the claimant had earned in his pre-injury job. Although the employer remains liable for the [medical] consequences of the work-related injury, there is no longer any 'disability,' *i.e.,* loss of earning power, attributable to the work-related injury.

*McKay v. Workmen's Comp. Appeal Bd. (Osmolinski)*, 688 A.2d 259, 261 (Pa. Cmwlth. 1997) (citation omitted).

If a claimant returns to work, but is unable to work the same number of hours due to the residual effects of his work injury, he is entitled to partial disability benefits. *See Donahay*; *see also Trevdan Bldg. Supply v. Workers' Comp. Appeal Bd. (Pope)*, 9 A.3d 1221 (Pa. Cmwlth. 2010); *Eljer Indus. v. Workers' Comp. Appeal Bd. (Evans)*, 707 A.2d 564 (Pa. Cmwlth. 1998). However, "[i]f the reduction in earnings is not . . . attributable to the work injury, no disability benefits are due." *Donahay*,

4

109 A.3d at 793. Thus, in order to establish that a claimant's benefits should be suspended, an employer has the burden of proving that the claimant's loss of earning power was not due to the work injury. *Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties)*, 99 A.3d 397 (Pa. 2014); *see also Donahay*. Moreover, in determining WC benefits, "[o]vertime earnings must be included in the calculation of the claimant's average weekly wage." *Donahay*, 109 A.3d at 790 n.3.

Dr. Donahue testified that he reviewed Claimant's medical records before Claimant's December 2, 2011 IME. Of significance to Dr. Donahue were degenerative changes evident on Claimant's May 8, 2011 lumbar spine x-ray, and May 18, 2011 MRI results reflecting broad-based, long-standing, degenerative disc bulges at L2-3, L3-4, and L4-5, L5-S1 with facet hypertrophies stenosis.

Dr. Donahue expressed that, during the IME, Claimant recounted his work injury and treatment history, and described that he had right anterior thigh pain, but no lumbar complaints. Dr. Donahue reported that Claimant had no lumbar spine tenderness, and he displayed normal lumbar range of motion and flexibility during his examination. Dr. Donahue also recalled that Claimant had full leg range of motion without radiating pain, his hips were pain free, he could stand on his heels and toes and walk symmetrically, and his lower extremity reflex, sensory and motor examinations were all within normal limits. Dr. Donahue pronounced that "there were no objective findings." R.R. at 16a.

Dr. Donahue explained that although Claimant's anterior thigh pain originates from the L3-4 area, Claimant's L3-4 disc bulge is more evident on the left, which does not correspond with Claimant's right-side complaints. Dr. Donahue described that although Claimant's L4-5 bulge is more pronounced to the right, he does not exhibit ankle pain that normally accompanies that condition. Dr. Donahue concluded within a reasonable degree of medical certainty that Claimant's work-

5

related lumbar strain had resolved, and that Claimant's ongoing symptoms were related to his pre-existing degenerative condition. *See* R.R. at 41a.

In defense of Employer's Petition, Claimant offered Dr. Argires' deposition testimony. Therein, Dr. Argires recalled that he first examined Claimant during an August 21, 2011 neurosurgical consultation. He testified that Claimant's neurological, sensory and motor strength testing results were normal, and that Claimant was responding well to conservative treatment and steroid injections. Dr. Argires also reviewed Claimant's MRI scan that revealed his right-sided L3-4 facet disease and a herniated disc on L3-4 on the left side. Dr. Argires concluded within a reasonable degree of medical certainty that Claimant's low back pain was secondary to the L3-4 disc herniation and L3-4 facet disease caused by his May 8, 2011 work incident.

Dr. Argires declared that Claimant had a "grossly normal exam." R.R. at 66a. Dr. Argires acknowledged that Claimant's MRI does not explicitly reference a herniated disc, and considered Claimant's L3-4 disc condition "more of a herniation than [a] bulge[.]" R.R. at 68a. Dr. Argires described that Claimant's spine had "pretty extensive multi-level issues . . . most pronounced [] at L3-4," and pronounced facet disease. R.R. at 67a-68a. He further stated that although left-side herniation would cause left-sided symptoms, Claimant's right-sided leg symptoms could easily result from the stenosis and facet disease, particularly when, as here, the herniation was in the midline. However, Dr. Argires admitted that some of Claimant's degenerative changes and the L3-4 herniation could have pre-existed Claimant's work injury, and/or could have been the result of Claimant's scoliosis or multi-level disc desiccation (i.e., drying out) due to age, and that Claimant's morbid obesity and/or diabetes could cause low back pain.

Dr. Argires examined Claimant again on January 24, 2012 and reported that although Claimant was still "having some symptoms," "he was much improved."

6

R.R. at 77a. Dr. Argires recounted issuing Claimant a medical release on January 24, 2012 to return to full-duty work using a lumbar corset, and to see Dr. Argires only on an as-needed basis. Dr. Argires recalled that Claimant did not want any weight restrictions because he wanted to keep his job, so he honored Claimant's request. Although Dr. Argires has not seen Claimant since January 2012, his father, Dr. James Argires, issued a work release status sheet on March 26, 2012 restricting Claimant from working overtime *in* the plane or stacking bags, but allowing Claimant to work overtime "in the bag chute." R.R. at 61a. Dr. Argires did not agree with Dr. Donahue that Claimant could have been recovered from his work injury as of December 2, 2011, since Claimant continued to experience symptoms. However, Dr. Argires acknowledged that Claimant could have reached his pre-injury baseline by the time of Dr. Argires' October 2012 deposition. *See* R.R. at 81a.

Claimant testified that from May 2011 until he returned to work in February 2012 with a back brace, his condition improved "[a] little bit," but he still experiences pain for which he takes medication three times a day. R.R. at 104a. Claimant described that while he continues to do his job, he must do it differently and more slowly. Claimant articulated that he worked more than 40 hours per week before his work injury, but is now unable to work overtime because he cannot put more than 8 hours of pressure on his back. He articulated that working *in* the plane consists of throwing bags from a conveyor to a cart and then kneeling and throwing the bags from the plane's back door and stacking them. Claimant acknowledged that he could work overtime *outside* the plane, but he is not permitted to select overtime he performs. *See* R.R. at 114a.

Based upon the foregoing, the WCJ made the following findings:

6. I have carefully reviewed Claimant's testimony and find it to be credible and worthy of belief. This determination is based in part on my personal observation of Claimant's demeanor during testimony. Claimant's testimony

7

regarding his ongoing symptoms and his job duties has not been rebutted by other evidence. Also significant to Claimant's credibility is his long tenure in his position, and his willingness to return to work in spite of ongoing symptoms. Accordingly, Claimant's testimony as summarized above is accepted as fact.

7. I have carefully reviewed the medical evidence presented in this matter and find that the testimony of Dr. Argires is more credible than the testimony of Dr. Donahue. Dr. Argires' testimony is supported by diagnostic test results and is consistent with Claimant's credible testimony regarding his continued back pain. Dr. Argires' testimony relating the disc herniation and facet disease to Claimant's work injury is credible, given Claimant's sudden onset of pain at the time of the injury, and his lack of any prior back complaints. Dr. Donahue's opinion of full recovery is not credible, given the heavy nature of Claimant's work duties and given his ongoing symptoms.

8. Based upon the testimony of Dr. Argires I find that Claimant has not fully recovered from his May 8, 2011 work injury. I find that Claimant is able to return to full duty work, with restrictions that Claimant should not work overtime in the plane or stacking bags. To the extent that the testimony of Dr. Donahue conflicts with these findings, such testimony is rejected.

WCJ Dec. at 4.

It is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Thus, neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). In addition, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations.

8

Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted). This Court has stated:

> '[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.' [*Minicozzi v. Workers' Comp. Appeal Bd. (Indust. Metal Plating, Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005)] (quoting [*Del.*] [*Cnty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles),* 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted). Moreover, this Court has held:

> 'Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003). 'In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder.' *Id.* 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' *Id.*

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007). Based upon its review of the record evidence and in light of the WCJ's role as factfinder, the Board stated:

> The record is clear that Dr. Argires acknowledged that he released Claimant to return to full unrestricted work in January 2012, but that it was his father, Dr. James Argires, who 2 months later restricted Claimant from performing overtime work on the plane and stacking bags. There was no testimony from Dr. James Argires[,] and Dr. Argires

further acknowledged that there were no notes in the Claimant's medical file regarding the restriction. **While we agree that there was no competent medical evidence presented that [C]laimant was incapable of performing overtime work, the Claimant, however, testified that he did not feel capable of performing overtime work due to continued back pain.** The WCJ accepted his testimony regarding his continued pain as credible and, thus, the acceptance of such testimony formed a sufficient basis for denying the [] Petition.

Board Dec. at 7 (emphasis added).

Indeed, the Board concluded that "there was no competent medical evidence presented that [C]laimant was incapable of performing overtime work[.]" Board Dec. at 7. However, *Employer has the burden* of proving that Claimant "is receiving wages equal to or in excess of what [he] had earned in his pre-injury job." *McKay*, 688 A.2d at 261. Employer failed to present any evidence that Claimant was capable of working overtime *in* the plane as he did before his work injury.

Moreover, the Board stated that the WCJ properly deemed credible Claimant's testimony that he continued to experience ongoing pain and did not feel capable of overtime work as a result. "The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Under circumstances where, as here, competent evidence supports the WCJ's finding that Claimant's testimony regarding his "ongoing symptoms" was credible, the Board and this Court must uphold it on appeal. WCJ Dec. at 4; *see also Lahr Mech.*

Viewing the evidence in a light most favorable to Claimant, as we must, and drawing all reasonable inferences which are deducible from the evidence the WCJ deemed credible, we hold that there was substantial evidence to support the conclusion that Claimant was incapable of working overtime *in* the plane. Thus, the

Board did not err by affirming the WCJ's determination denying Employer's Petition to suspend Claimant's partial disability benefits.

Claimant argues that the Board erred by reversing the WCJ's expansion of Claimant's work injury to include L3-4 disc herniation and L3-4 facet disease. We disagree.

The WCJ's Finding of Fact 7 states, in relevant part: "Dr. Argires' testimony relating the disc herniation and facet disease to Claimant's work injury is credible, given Claimant's sudden onset of pain at the time of the injury, and his lack of any prior back complaints." WCJ Dec. at 4. After reviewing the record, the Board found:

> [Dr. Argires] also would not agree that Claimant's 'bulges' were not 'herniations.' Rather, he felt that the MRI was up for interpretation, and his opinion was that the MRI studies showed that Claimant had a herniation at L3-4. Dr. Argires admitted that the herniation at L3-4 'could have' preexisted the May 8, 2011 work-related injury, and that much of the pathology shown on the objective studies was degenerative. He also admitted that Claimant's degenerative disc desiccation could cause his discs to herniate, and that Claimant's scoliosis could cause his disc bulges. He also admitted that the MRI findings of degeneration were normal for Claimant's age.

Board Dec. at 5. Based thereon, the Board concluded

> that the WCJ erred in amending the [work injury] description to include a disc herniation and facet disease. A review of Dr. Argires['] testimony reveals [the] same to be equivocal and not sufficient to support a finding that the disc herniation and facet disease were work[-]related. Thus, to the extent the WCJ intended to expand the description of injury in Finding of Fact [] 7, such was in error and we conclude that the description of injury remains a low back strain.

Board Dec. at 8. Finding no error in the Board's reasoning, we do not disturb its holding on this issue.

11

Employer also argues that the Board erred by upholding the WCJ's decision not to terminate Claimant's benefits where the Board found Dr. Argires' testimony regarding Claimant's work injury description equivocal, and Dr. Argires conceded that Claimant may have returned to his pre-injury baseline.[5]  We disagree.

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury."  *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008).  The burden is substantial, since disability is presumed to continue unless and until proved otherwise.  *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123 (Pa. Cmwlth. 1993).

> In a case where the claimant complains of continued pain, this **burden is met when an employer's medical expert unequivocally testifies** that it is his opinion, within a reasonable degree of medical certainty, **that the claimant is fully recovered**, **can return to work without restrictions and** **that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury**.  **If the WCJ credits this testimony, the termination of benefits is proper.**

*Udvari*, 705 A.2d at 1293 (emphasis added; footnote omitted); *see also Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007).

It is not clear to this Court that the WCJ expressly intended by Finding of Fact 7 to expand Claimant's work injury.  However, to the extent that the WCJ so intended, the Board reversed on the basis that Dr. Argires' testimony that Claimant's work injury also resulted in disc herniation and facet disease was equivocal.

---

[5] Employer also claimed that the Board's error in upholding the WCJ's decision was due to a lack of record evidence to support the Board's conclusion that Claimant was restricted from overtime work.  Because the Board's conclusion that Claimant was restricted from overtime work was based upon substantial evidence, Employer's argument on this issue fails.

Notwithstanding, Claimant's accepted work injury was at all times limited to low back strain, which Dr. Argires did not dispute. At no time did the WCJ or the Board declare Dr. Argires' testimony regarding Claimant's accepted low back strain equivocal.[6] Under the circumstances, the Board's finding that Dr. Argires' testimony regarding Claimant's purported expanded work injury description was equivocal, is not a basis upon which this Court may reverse the WCJ's decision denying Employer's Petition.

Second, although Dr. Argires acknowledged the possibility that Claimant may have returned to his pre-injury baseline, the testimony is clear that the timeframe referenced was Dr. Argires' October 16, 2012 deposition rather than when the Petition was filed. *See* R.R. at 81a.[7] Since Dr. Argires had not seen Claimant since January 24, 2012, his statement that Claimant may have returned to his pre-injury baseline as of October 2012 would certainly be equivocal. Thus, Dr. Argires'

---

[6] Employer's contention that "[s]ince Dr. Argires was found equivocal as to the [expanded] injury description, Dr. Donahue must be found unequivocal[,]" has no merit. Employer Br. at 16. The WCJ was free to accept or reject the testimony of either medical expert and afford it weight. *Griffiths*. There is no legal basis for Employer's claim that affording less weight to Dr. Argires' testimony on the expanded injury issue requires that Dr. Donahue's testimony on the overtime work issue must be weighed more heavily.

[7] The specific testimony was:

> Q  Now, is it possible that [Claimant] could have reached his pre-injury baseline at this point?
>
> A  Is it possible?  Is that what you said?  Is it possible?
>
> Q  Yes.
>
> A  At this point in time?  Like whether he's there now?
>
> Q  Yes.
>
> A  It's possible, yes.

R.R. at 81a.

13

concession that Claimant may have returned to his pre-injury baseline cannot form the basis for reversing the WCJ's decision denying Employer's Petition.

Viewing the evidence in a light most favorable to Claimant, as we must, and drawing all reasonable inferences which are deducible from the evidence the WCJ deemed credible, we hold that Employer failed to prove that Claimant fully recovered from his work injury or that Claimant can work without restriction. Thus, the Board did not err by affirming the WCJ's decision denying Employer's Petition to terminate Claimant's partial disability benefits.

Based upon the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Planamento, :
                Petitioner :
                              :
         v. :
                              :
Workers' Compensation Appeal :
Board (U.S. Airways), : No. 1507 C.D. 2015
                Respondent :

U.S. Airways and AIG, :
                Petitioners :
                              :
         v. :
                              :
Workers' Compensation Appeal :
Board (Planamento), : No. 1744 C.D. 2015
                Respondent :

## O R D E R

AND NOW, this 1st day of July, 2016, the Workers' Compensation Appeal Board's August 19, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge